# THE MARYLAND LAND AND PERMANENT HOMESTEAD ASSOCIATION OF BALTIMORE COUNTY *vs.* BENJAMIN P. MOORE, TRUSTEE, ELIZABETH R. HOPKINS AND GERARD T. HOPKINS.

*Vendor's Lien—Trustee—Bona fide Purchaser—Notice.*

A trustee made an absolute conveyance of part of the trust property by a deed reciting the full payment of the purchase money when only a part of the same was in fact paid. The vendee conveyed the property to the defendant corporation which paid the consideration. Upon a bill filed by a substituted trustee to enforce a vendor's lien against the defendant, *Held,* that although the trustee was guilty of a breach of trust in making such conveyance, yet the defendant was not liable, unless it had notice when the property was bought, that part of the purchase money was still owing from its vendor to the Trustee.

Upon the facts of this case, it was *held* that neither the defendant nor its attorney had notice that part of the purchase money of the land was due from its vendor to the trustee, and that the defendant was consequently a *bona fide* purchaser without notice of the breach of trust.

Appeal from the Circuit Court for Baltimore County. The case is stated in the opinion of the Court. The bill in this case was filed by the appellees to enforce a vendor's lien, and alleged that at the time of the conveyance of the trust property by the trustee to the party under whom the appellant claims, only a part of the purchase money was actually paid to the trustee; and that the appellant, then having knowledge of this fact and of the trust, was bound in equity for the deficiency. The Court below (BURKE, J.) held that the appellant did have such knowledge, and decreed the payment to the appellee of the sum of $7,975, with interest from August 19, 1874.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Edgar H. Gans* (with whom was *B. H. Haman*, on the brief), for the appellant.

The Court below seemed to treat the question as simply one of notice, and found from the facts surrounding the transaction that the appellant did have notice of the non-payment of the purchase money by the Woodberry Land Company to Gerard H. Reese, trustee.   The appellee claims that only $12,950 of the $20,925 was paid by the Woodberry Land Company to the trustee, and of the non-payment of the balance the appellant had notice when it purchased from the Woodberry Land Company.   We think, however, that there are other questions of law in the case besides the question of notice.   The appellant will maintain: (1.) That whatever vendor's lien existed was waived and lost by the action of the trustee; and (2), that it was a *bond fide* purchaser, without notice.

We are dealing with two transactions, the sale by Reese, trustee, to the Woodberry Land Co, and the sale by this latter company of the same tract of land.   In both of these transactions F. L. Morling acted for the Woodberry Co. When that company bought from Reese, trustee, the purchase price was $20,925.   Morling, in dealing with Reese, evidently told him of the sale to the appellant, and that there would be $14,000 in notes of the appellant.   Reese was willing to take these notes, provided Morling could get them discounted.   Morling, therefore, made an arrangement with Wm. J. Hooper, who had the funds of Mrs. Phillips to invest, to have her discount the notes.   Accordingly, Reese, trustee, received these $14,000 of notes in part payment, with the understanding that they were to be discounted; he gave Morling a credit of $900 in cash, for commissions he owed him on a former transaction, and for the balance, $7,000, Reese took the four single bills of the Woodberry Land Company.   Subsequently, to-wit, August 28, 1874, Wm. J. Hooper, acting as agent for Mrs. Phillips, discounted these $14,000 of notes for Reese, in accordance

with the understanding with Morling, by giving his check for $12,950.

The Court below decided that this was the only payment made by the Woodberry Land Company, and that consequently, the difference between the $20,925 and the $12,950, or $7,975, was still due, and of the fact of the non-payment of this balance, the appellant had notice, and consequently, the vendor's lien could be enforced. There is no evidence in the record from which it can be found that the appellant had notice of the non-payment of this balance. The arrangement between Morling and Hooper, for the discount of the $14,000 of notes, might indeed have been evidence that on the day of the transfer of the property to the appellant, it had notice that this amount had not been paid to the trustee, but there is nothing in any part of the testimony to show that Hooper or any other person, whose knowledge would affect the appellant, had notice that the balance was to be adjusted by paying Morling some $900 of old debt, and by taking promissory notes or single bills for $7,000. See *Gemmel* v. *Davis*, 75 Md. 553; *Winchester's case*, 4 Md. 231. This point cannot be very well discussed unless the evidence upon which the appellee relies is pointed out in his brief. It is like proving a negative.

Each of these single bills was assigned by Reese, trustee, and the money procured on them by him used in the business of which he was senior partner. It is practically the same thing as if he had been paid cash by the Woodberry Company and had stolen the cash from his trust fund for the use of his firm. The argument we formulate as follows:

1. These are single bills: *Gist* v. *Drakely*, 2 Gill, 333; *Trasher* v. *Everhardt*, 3 G. & J. 234; *Jackson* v. *Myers*, 43 Md. 453; *Hamburger* v. *Miller*, 48 Md. 323. 2. The doctrine is well-settled in this State that a trustee cannot enforce a vendor's lien when the bond securing the payment of the purchase money has been assigned, whether the assignment was made with or without the sanction of

the Court, when the trust estate cannot be made liable to the assignee. In such cases, as to the trustee, it is regarded a payment

The case of *Hayden* v. *Stewart*, 4 Md. Ch. 280, is exactly the case at bar. See also *Dixon* v. *Dixon*, 1 Md. Ch. 221 ; *Schnebly* v. *Ragan*, 7 G. & J. 125-6 ; *Iglehart* v. *Armiger*, 1 Bl. 521 ; *White* v. *Williams*, 1 Paige, 502 ; *Sugden on Vendors*, chapter 19, page 398, note *d ; Macreath* v. *Symmons*, Leading Cases in Equity, Vol. 1, pt. 1, 493. 3. The trustee or the trust estate could not be liable to the Union Bank. *Third Nat. Bank* v. *Lange*, 51 Md. 138.

The conclusion is that the trustee actually received the money and cannot be made to pay it back.

The only remaining question of liability is as to whether the purchaser is bound to see to the application of the purchase money. In these classes of cases the purchaser is never obliged to see to the application of the purchase money. *Van Bokkelen* v. *Tinges*, 58 Md. 57 ; *Keistere* v. *Scott*, 61 Md. 507 ; *Perry on Trusts*, sections 791-800.

*Arthur W. Machen*, for the appellees.

That the Maryland Land and Permanent Homestead Association was fully apprised of all the facts, had notice of the trust from the land records and Court proceedings, had knowledge that only the $12,950 of cash was paid to the trust estate, and knew that the property conveyed by the trustee's deed was equitably charged with the obligation for the payment of the balance of the $20,925, is abundantly shown. L. P. D. Newman, its solicitor and agent, was privy to the whole transaction. He had been Sanford's counsel from the beginning, in connection with the purchase from the trustee. None knew better than he the limitations of the trust, and the want of power of the trustee to convey title without payment of the full consideration of $1,500 per acre. The two deeds, the one from the trustee to the Woodberry Land Company, and the other from the Woodberry Land Company to the Maryland Land and Perma-

nent Homestead Association, were parts of one conveyance, delivered and recorded together. The deeds were dated, one on the .19th of August, 1874, and the other on the 20th of August, 1874, the certificates of the Clerk of the Superior Court to the official character of the justice, are both dated on the 21st day of August, and on the 22d day of August, 1874, both deeds were together deposited for record. All parties knew perfectly well that the Woodberry Land Company had no money to pay the trustee with except as provision was made in the transaction itself. Therefore, there was the understanding, above referred to, that Mr. Wm. J. Hooper, the president of the Maryland Land and Permanent Homestead Association, and also agent of Mrs. Amanda M. Phillips, would discount $14,000 of notes of that corporation, the proceeds to be paid to, Mr. Reese, the trustee.

A purchaser under such circumstances, taking with notice of the trust, takes subject to the trust. *Abell* v. *Brown, Trustee*, 55 Md. 217 ; *Ins. Co.* v. *Eldridge*, 102 U. S. 545 ; *Oliver* v. *Piatt*, 3 How. 333.

ROBINSON, C. J., delivered the opinion of the Court.

The question raised on this appeal is whether the appellees are entitled to a vendor's lien on a lot of ground containing thirteen acres, which was sold and conveyed by the Woodberry Land Company to the Maryland Land and Permanent Homestead Association of Baltimore County, the appellant corporation ?

The undisputed facts are these : On the 9th of April, 1842, John Clark and wife conveyed to John Roberts a tract of 107 acres of land adjoining the village of Woodberry, in trust for Thomas R. Mathews and Ann, his wife ; the trusts being fully set forth in the deed. Upon the death of Roberts, Gerard H. Reese was appointed trustee in his place ; and in the exercise of the power contained in the deed of trust, Reese, trustee, on the 1st July, 1873, sold the entire tract of 107 acres to Elias B. Sanford for the sum of $104,312.50, of which $5,000 was paid in cash, and for·

the balance of the purchase money Sanford gave six promissory notes to the trustee.

By bond of conveyance duly executed and recorded, Reese, trustee, agreed that upon the payment by Sanford to said trustee of the sum of $1,500 for each and every acre sold by Sanford, lying south of a certain line drawn across the tract, and of the sum of $1,250 for each and every acre so sold by him, lying north of said line, he, Reese, trustee, would execute to him or to whomsoever he might designate, a deed in fee simple for so much of the land as had been paid for in accordance with terms of the bond of conveyance.

On the 6th December, 1873, Sanford sold and conveyed the entire tract of 107 acres to the Woodberry Land Company of Baltimore City, a corporation of which he was president, for the sum of two hundred thousand dollars, the said sale being subject to all the provisions, agreements and covenants contained in the bond of conveyance from Reese, trustee, to Sanford.

On the 19th August, 1874, Reese, trustee, conveyed to the Woodberry Land Company thirteen acres, part of the 107 acres; and the deed, after reciting the provisions of the bond of conveyance, declares that "the parties of the third part have paid to the parties of the first and second parts the sum of $20,925 for the land hereinafter described, the receipt whereof the parties of the first and second parts do hereby acknowledge." Here then is an absolute conveyance by Reese, trustee, to the Woodberry Company of the thirteen acres, and a declaration in the deed by him that the entire purchase money had been paid according to the terms of the bond of conveyance. Having the legal title, the Woodberry Company sold the property to the appellant for $27,900, and the purchase money having been paid, that company, on the 21st August, 1874, conveyed the thirteen acres to the appellant.

It now appears, however, that although Reese, the trustee, conveyed the property to the Woodberry Company,

and in the deed declared that the entire purchase money, $20,925, had been paid, that company paid in fact but $12,950, and gave its promissory notes for $7,975, being the balance of the purchase money, payable to the order of G. H. Reese, trustee.

These notes were subsequently discounted by Reese, trustee, at the National Union Bank, for account of the firm of G. H. Reese & Co., a commercial house of which he was a member, and not being paid at maturity, they have been renewed from time to time and are still unpaid. In the meantime Reese, the trustee, has died, and the firm of G. H. Reese & Co. has failed, and the Woodberry Company, it is said, is insolvent.

This is a bill filed by Benjamin P. Moore, trustee appointed in the place of Reese, to enforce a vendors' lien for the $7,975, unpaid purchase money due by the Woodberry Company as against the appellant, to whom that company has sold and conveyed the property.

Now, upon these facts there cannot be any difficulty as to the principles of law by which this claim to the lien is governed. Reese, the trustee, had, it is admitted, full power under the deed of trust to sell the property, and upon the payment of the purchase money to convey the title to the purchaser. The conveyance by him of the legal title to the Woodberry Company before the payment of the entire purchase money was beyond question a breach of trust, and it is equally clear that as against that company the lien might have been enforced for the payment of the balance of the purchase money due by it to Reese, trustee. But in the meantime that company has sold the property and the entire purchase money has been paid and the title conveyed to the appellant. There is no ground, therefore, on which a vendor's lien can be enforced against the appellant, unless it had notice when it bought and paid for the property, that part of the purchase money was due and owing by the Woodberry Company to Reese, trustee.

And the question, and only question, is whether the

appellant is a purchaser with such notice.   The record is a large one, filled with matter that has little or nothing to do with the case, and when the learned counsel was asked during the argument to point out the testimony on which he relied to prove notice, the answer was that the record was full of it, but that he had not the time to refer to it in detail.   Now we have examined it with a good deal of care, and have been unable to find any proof from which it can be fairly and reasonably inferred that the appellant had notice, actual or constructive, that any part of the purchase money was unpaid.   The bill to enforce this lien was not filed till 1886, more than *twelve years after the sale by Reese to the Woodberry Company*, and no testimony was taken till two years after the bill had been filed.   We are not surprised, therefore, that some of the witnesses should have so imperfect recollection in regard to the facts and circumstances connected with a sale of property which took place fourteen years ago.   Mr. Hooper, the president of the appellant corporation at the time of the purchase of the thirteen acres from the Woodberry Company, says he is unable to testify from his own recollection in regard to the sale and purchase of the property.   He finds, however, by referring to the minutes of the appellant, of the sale of 21st September, 1874, that he was one of the committee that reported that the property had been purchased from the Woodberry Company, and produced at the same time a deed from that company to the appellant.   He also finds that promissory notes to the amount of $14,000, being part of the purchase money due by the appellant to the Woodberry Company, were signed by him as president; and that these notes were discounted by him as the agent for his aunt, Mrs. Phillips, and the proceeds, $12,950, were paid to Reese on account of purchase money due him as trustee by the Woodberry Company.   He denies, however, having any knowledge that there was a balance of the purchase money still due by the Woodberry Company, on account of its purchase of the property.   On the contrary, he says that neither he himself

nor the Board of Directors had any knowledge whatever in regard to the transactions between Reese, trustee, and the Woodberry Company. And after a long and searching examination he closes his testimony by saying: " I had no idea, and no knowledge whatever, but what the property purchased by us from the Woodberry Land Company was perfectly straight, and as far as that Company and the party from whom it purchased, it was all correct, and if there was anything wrong about it, I, as a member of that company, knew nothing."

They had requested Mr. Newman, their solicitor, to examine the title of the Woodberry Company and his report was accepted as being entirely satisfactory. It is quite unnecessary to consider the testimony of Mr. Numsen, for he does not recollect anything about the particulars of the sale, though he was at that time one of the members of the Board of Directors.

In fact, Mr. Morling, who was the secretary of the Woodberry Company, and who negotiated the sale with the appellant, is the only witness who seems to have a recollection in regard to the matters connected with the sale and purchase by the appellant. He says the arrangement made with the Woodberry Company was that the appellant was to buy the thirteen acres at $2,000 an acre, $900 to be paid in cash, eight houses on Stockton alley and one house on Tenant street, and for the balance of the purchase money, amounting to about $14,000, the appellant was to give its promissory notes payable to the order of the Woodberry Company, and these notes were to be discounted by Mrs. Phillips. These notes were discounted, and the net proceeds, $12,950, were paid by the Woodberry Company to Reese, trustee, and for the balance of the purchase money that Company gave its promissory notes amounting to about $7,000, and these notes were discounted by the National Union Bank. Thereupon, as the proof shows, Reese, trustee, conveyed the property to the Woodberry Company by deed dated 19th August, 1874; and two days afterwards

that Company conveyed the same property to the appellant. The fact, however, that the Woodberry Company had given to Reese, trustee, its promissory notes for the $7,000 balance of purchase money was never, to his knowledge, he says, communicated to the appellant. And nowhere in this record do we find any proof to satisfy us that the appellant had notice, actual or constructive, that part of the purchase money of the thirteen-acre lot was unpaid. On the contrary, we think it may be fairly said that they bought this property under the belief that the Woodberry Company had paid the entire purchase money and had a good fee simple title to it. There is proof to show that Mr. Newman, the appellant's solicitor, knew that the Woodberry Company had given its promissory notes for $7,975, payable to the order of Reese, trustee, being the balance of the purchase money due to him, but Mr. Newman is dead, and there is no proof from which it can be inferred that this fact was made known by him to the appellant.

So dealing with this case upon the proof before us, the appellant must, it seems to us, be treated as a *bona fide* purchaser without notice of the unpaid purchase money due by the Woodberry Company to Reese, trustee. And such being the case, there is no ground on which the appellee can claim a vendor's lien as against the appellant.

*Decree reversed and bill dismissed.*

(Decided November 22nd, 1894.)

A motion for a re-argument was subsequently made by the appellees, and in disposing of this motion,

ROBINSON, C. J., delivered the opinion of the Court.

In the motion for re-argument in this case, the counsel for the appellee says : "It is plain, therefore, that the decision rests on the ground of the interval between the two conveyances, from the trustee to the Woodberry Land Company, and from the latter to the appellant." In this the counsel is mistaken. We rested the decision on the ground that the Maryland Land and Permanent Homestead Asso-

ciation, the appellant, was a *bona fide* purchaser of the land in question from the Woodberry Land Company, holding the title under a deed from Reese, trustee, in which he acknowledged that the entire purchase money had been paid and that there was no sufficient proof to show that the Maryland Land and Permanent Homestead Association had notice that part of the purchase money was in fact unpaid and due by the Woodberry Company to Reese, trustee.

We further said there was proof to show that Mr. Newman, the appellant's solicitor, had such knowledge, but that Mr. Newman was dead and it did not appear that such knowledge was made known to the appellant. We did not mean to decide, as a matter of fact, that Newman himself had such knowledge, but merely that there was proof tending to prove knowledge on his part. Much less did we mean to say that such knowledge, if any he had, was acquired by him while he was acting as attorney for the appellant in regard to the sale and purchase of the property out of which this controversy has arisen. We agree with the counsel for the appellee that if Mr. Newman acquired the information, or had notice that part of the purchase money was unpaid, and such information was acquired by him while acting as attorney for the appellant in regard to the transaction, such information would be notice to the appellant, and for the reason that that, so far as it relates to the same transaction, the attorney represents his client, and knowledge on the part of the former will be imputed to the latter.

Upon the motion for re-argument we have carefully examined the testimony in the record on this point and have failed to find any proof which satisfactorily establishes the fact that Newman had notice that part of the purchase money was unpaid by the Woodberry Company. Now, what is the proof? It shows that the negotiations in regard to the sale and purchase of the property between the Woodberry Company and the Maryland Land and Permanent Homestead Association were conducted by Mr. Frank Morling, representing the Woodberry Company, and Messrs.

Hooper, Hammond and Newman, representing the Homestead Association. It shows that the Woodberry Company sold to the Association the property against which the vendor's lien is now claimed, and that the entire purchase money was paid by the Association to the Woodberry Company, and thereupon the latter company having an absolute paper title, conveyed the property to the Association. It further shows that, although the company had the legal title under a conveyance from Reese, trustee, part of the purchase money remained unpaid. Now, we come to the proof as to Newman's knowledge of this fact. Morling testifies that he conducted the negotiations in regard to the sale of the property by Reese, trustee, and the Woodberry Company, and that he himself made the arrangement with Reese as to the payment of the purchase money. And in answer to the 13th cross-interrogatory, he says the fact that the Woodberry Company had given to Reese, trustee, its notes, amounting to over seven thousand dollars, on account of the purchase money, was never to his knowledge communicated to the Maryland Association or to any one representing it.

It thus appears from the testimony of Morling, the appellee's own witness, that he conducted the negotiations for the sale of the property by the Woodberry Company to the Maryland Association, and that the arrangements in regard to the payment of the purchase money due by said company to Reese, trustee, and that neither the Association nor Mr. Newman, the attorney of the Association, knew anything about these arrangements—that is to say, they knew nothing about the seven thousand dollars due by the Woodberry Company to Reese, for which the company gave its notes. And this is the unpaid purchase money of which it is contended that Newman had notice. There are, we admit, some circumstances arising from the relations of Newman to the parties from which it may be conjectured that he must have known that the Woodberry Company had given its notes to Reese for the balance of the purchase

money; but the proof is altogether insufficient in our judgment to prove such knowledge. In the determination of the question we are deprived of the benefit of the testimony of Reese, trustee, and Newman, both of whom are dead. And, besides, we are dealing with transactions which occurred twenty years ago and in regard to which the recollection of the witnesses, with the exception of Morling, is imperfect and obscure. And there is nothing in his testimony which tends to show that Newman had notice.

The counsel for the appellee is mistaken in saying that Newman was one of the directors of the Maryland Association at the time it bought the property in question from the Woodberry Company. Mr. Hooper testifies that the directors at the that time were Messrs. Hooper, Numsen, Sauerberg and Hammond.

For the reasons we have stated the motion for re-argument will be overruled.

*Motion overruled.*

(Decided April 4th, 1895.)